UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| QUENTIN L. TAYLOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-02169-SEB-KMB |
| | ) |
| DENNIS REAGLE, | ) |
| CENTURION HEALTH, | ) |
| AKILAH LAMAR, | ) |
| ARYANNA MOSS, | ) |
| JERMY LAREAU, | ) |
| WILLIAM, | ) |
| CAMPBELL, | ) |
| | ) |
| Defendants. | ) |

**Order Screening Complaint and Directing Further Proceedings**

Plaintiff Quentin Taylor is a prisoner currently incarcerated at Pendleton Correctional Facility ("Pendleton"). He filed this civil action alleging that he has not received adequate treatment for his mental and medical health needs. Because the plaintiff is a "prisoner," this Court has an obligation to screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than formal pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

Mr. Taylor names seven defendants in his complaint: (1) Dennis Reagle, warden of Pendleton; (2) Centurion Health, the contractor that provides medical care services for the Indiana Department of Correction ("IDOC"), including services at Pendleton; (3) Dr. Akilah LaMar, a psychologist at Pendleton; (4) Aryanna Moss, a mental health professional at Pendleton; (5) Jeremy LaReau, a mental health professional at Pendleton; (6) Sergeant Williams; and (7) Officer Campbell. Warden Reagle and Centurion Health are sued in their individual and official capacities. The remaining defendants are sued in their individual capacities only. Mr. Taylor seeks money damages and injunctive relief. He bases his complaint on the following allegations:

On January 3, 2022, Mr. Taylor had a mental health breakdown and was placed on suicide watch/observation. He was removed from suicide watch the next day. The day after that, Mr. Taylor was moved to G Cellhouse, a restrictive housing/segregation unit. He was not properly evaluated by mental health staff before being moved. At the time Mr. Taylor was placed in restrictive housing, he had mental health diagnoses of major depression, anxiety, antisocial personality disorder, and posttraumatic stress disorder. Mr. Taylor alleges that those diagnoses classify him as seriously mentally ill and that Dr. LaMar gave him a mental health status classification code of "D." Mr. Taylor alleges that he is considered a high risk for suicide because

of previous attempts and self-harming behavior, along with countless placements on suicide watch. Mr. Taylor was also admitted into a mental health treatment facility before being transferred to Pendleton.

While housed in restrictive housing, Mr. Taylor was subjected to extreme isolation and sensory deprivation. He was denied all recreation and out-of-cell time for three months, only received three showers a week, had access to extremely limited property, could not access the commissary, had no television, had no job opportunities, and had limited programming opportunities. Mr. Taylor began to have mental health struggles and began writing mental health staff. He asked to be seen out of his cell. His requests were ignored or denied.

The extreme isolation and sensory deprivation caused Mr. Taylor to feel overwhelmed, and he experienced severe stress, major depression, anxiety, insomnia, suicidal thoughts, and thoughts of self-harm. He struggled with paranoid thoughts and was afraid to leave his cell for weeks. He told Dr. LaMar, Ms. Moss, and Mr. LaReau about his problems verbally and in writing, but he was ignored.

On April 10, 2022, Mr. Taylor had another mental health breakdown and felt suicidal. He was placed on suicide watch/observation. He told Ms. Moss and Mr. LaReau that the conditions in restrictive housing were having a negative effect on his mind and causing his mental health conditions to deteriorate. They did not try to protect Mr. Taylor or act to protect him from further harm.

In early May 2022, Mr. Taylor began to experience serious mental health issues. He wrote mental health staff and Defendants multiple times and told them about his mental health struggles. He told them he was having overwhelming suicidal thoughts and asked to be see outside of his cell because his mental health had deteriorated significantly. His requests were ignored or denied.

On May 11, 2022, Mr. Taylor wrote out a "do not resuscitate" order, telling the IDOC and medical providers not to attempt to resuscitate him in the case of a serious emergency, death, or suicide attempt. Because of this document and Mr. Taylor's bizarre behavior, mental health staff were contacted about his mental health conditions. Later that day, Mr. Taylor had a severe mental health breakdown. He attempted to commit suicide by taking 46 pills that he had obtained from other inmates. He took the pills in front of Mr. LaReau, who then left him unattended while informing Sergeant Williams and Dr. LaMar about what had happened. Mr. LaReau returned said that he told Sergeant Williams that Mr. Taylor needed immediate medical attention due to a possible overdose and suicide attempt. Mr. LaReau then left Mr. Taylor unattended again.

Sergeant Williams disregarded Mr. LaReau's directions and did not get Mr. Taylor medical attention for about two hours. Mr. Taylor told Sergeant Williams and Officer Campbell that he was suffering from severe abdominal pain, headache, slurred speech, and loss of vision, but they ignored him and left him unattended for about two hours. Only then was he sent to medical.

Once Mr. Taylor made it to medical, he was not seen by medical staff and did not receive medical treatment. He was placed in a shakedown booth for another two hours, where he struggled to stay awake. After two hours, Mr. Taylor was removed from the shakedown booth and placed on suicide watch/observation. While on suicide watch/observation, he told Dr. LaMar and Ms. Moss that he still had not seen medical and was in pain. He also requested mental health care. He also said he wanted to be considered for another housing environment because the conditions in restrictive housing were too overwhelming for him.

Mr. Taylor was held on suicide watch for seven days. During that time, he received no treatment or care. All he got was a daily visit from Dr. LaMar and/or Ms. Moss asking if he was

still suicidal. He would say that he was still struggling, and they would leave. No other assistance, treatment, or care was provided.

After seven days, Mr. Taylor was removed from suicide watch and placed back in restrictive housing in G Cellhouse again. Again, the harsh conditions overwhelmed him. Dr. LaMar and Ms. Moss had the authority to request or order that Mr. Taylor be moved from restrictive housing to a mental health treatment facility, but they did not do so.

During the months following Mr. Taylor's suicide attempt, his mental health conditions continued to deteriorate, and he decompensated. He kept requesting mental health treatment and out-of-cell meetings. The lack of adequate treatment and harsh conditions exacerbated his serious mental illness. Once Mr. Taylor was back in G Cellhouse, he engaged in self-harm by cutting himself with a razor.

Mr. Taylor sets out three claims: In Count 1, he brings Eighth Amendment claims of deliberate indifference to serious medical and mental health needs against Dr. LaMar, Ms. Moss, and Mr. LaReau based on their failure to provide him with adequate mental health treatment. In Count 2, he brings Eighth Amendment claims of deliberate indifference to serious medical needs against Sergeant Williams and Officer Campbell based on their failure to obtain medical treatment for him after he attempted to commit suicide by swallowing 46 pills. Finally, in Count 3, he brings a "Monell claim/supervisory liability" against Warden Reagle and Centurion Health. *Id.* at 20. He alleges that Warden Reagle failed to adequately train his officers on how to deal with inmates suffering from serious mental illness. He also alleges that Warden Reagle was notified and made aware of Mr. Taylor's inhumane conditions and lack of treatment before his suicide attempt but failed to properly address the issue. He alleges that Centurion Health has a widespread practice of denying seriously mentally ill inmates needed treatment, evaluation, and assessments; ignoring

clear signs of mental health deterioration and decompensation; administering inappropriate treatment; failing to properly train employees how to identify and address inmates' deterioration and decompensation; and intentionally delaying mental health treatment.

### III. Discussion of Claims

Mr. Taylor's claims all revolve around allegations that he was deprived of adequate medical and mental health treatment. Because Mr. Taylor is a convicted prisoner, his medical treatment is evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."). The Eighth Amendment "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain." *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (cleaned up). "To determine if the Eighth Amendment has been violated in the prison medical context, [the Court] perform[s] a two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Petties v. Carter*, 836 F.3d 772, 727–728 (7th Cir. 2016) (en banc). "A prison official is deliberately indifferent only if he knows of and disregards an excessive risk to inmate health or safety." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (cleaned up).

Under this standard, Mr. Taylor has adequately alleged Eighth Amendment claims for damages based on deliberate indifference to serious medical needs against Dr. LaMar, Ms. Moss, and Mr. LaReau in Count 1, and those claims **shall proceed**. He has also adequately alleged Eighth Amendment claims of deliberate indifference to serious medical needs against Sergeant Williams and Officer Campbell in Count 2, and those claims **shall proceed**.

As to Count 3, Mr. Taylor has alleged that Warden Reagle knew that Mr. Taylor was receiving inadequate health treatment before his suicide attempt and did nothing to correct the situation. Those allegations are sufficient to state an Eighth Amendment claim for damages against Warden Reagle in his individual capacity based on allegations that he was deliberately indifferent to Mr. Taylor's serious medical needs. Those claims **shall proceed**.

As to the claims against Centurion Health, to prevail on those claims, Mr. Taylor must plead facts plausibly showing that was deprived of constitutionally adequate medical care as a direct result of a Centurion policy or custom and that Centurion "took the action with conscious disregard for the known or obvious risk of the deprivation." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236 (7th Cir. 2021). Under that standard, Mr. Taylor has adequately alleged an Eighth Amendment claim for damages against Centurion Health for deliberate indifference to his serious medical needs, and those claims **shall proceed**.

Finally, the Court notes that Mr. Taylor is seeking injunctive relief for the ongoing failure to provide him with adequate mental health care, including transfer to a mental health treatment facility. *See* dkt. 1 at 22. Accordingly, a claim for prospective injunctive relief against Warden Reagle in his official capacity and against Centurion Health[1] **shall proceed**. *See Indiana Protection & Advocacy Servs. v. Indiana Family & Social Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2020) ("A court applying the *Ex parte Young* doctrine now need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (cleaned up)).

---

[1] The Court notes that Mr. Taylor indicated that he was suing Centurion Health in its "official capacity." Dkt. 1 at 4. Centurion Health does not have an "official capacity" as that term is commonly understood. The Court thus understands this reference to mean that Mr. Taylor is asking the Court to issue an injunction against Centurion Health.

In summary, the following claims will proceed: (1) Eighth Amendment claim for damages based on deliberate indifference to serious medical needs against Dr. LaMar, Ms. Moss, and Mr. LaReau; (2) Eighth Amendment claim for damages based on deliberate indifference to serious medical needs against Sergeant Williams and Officer Campbell; (3) Eighth Amendment claims for damages based on deliberate indifference to serious medical needs against Warden Reagle in his individual capacity; (4) Eighth Amendment claims for damages based on deliberate indifference to serious medical needs against Centurion Health; and (5) a claim for injunctive relief against Warden Reagle in his official capacity.

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through April 17, 2023,** in which to identify those claims.

### IV. Service of Process

The **clerk is directed** pursuant to *Fed. R. Civ. P.* 4(c)(3) to issue process to defendants Dennis Reagle, Centurion Health, Akilah LaMar, Aryanna Moss, Jeremy LaReau, Sergeant Williams, and Officer Campbell in the manner specified by Rule 4(d). Process shall consist of the complaint filed on November 8, 2022, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve the employees of the Indiana Department of Correction and Centurion electronically.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**Defendants Reagle and Centurion shall file their respective responses to Mr. Taylor's pending motion for preliminary injunction, dkt. [4], at the same time they file their respective Answers or other responses to Mr. Taylor's complaint.**

**IT IS SO ORDERED.**

Date: _____3/22/2023_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

QUENTIN L. TAYLOR
178973
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Electronic service to Indiana Department of Correction:
    Sergeant Williams
    Officer Campbell
    (All at Pendleton Correctional Facility)

Electronic service to Centurion
    Akilah LaMar
    Aryanna Moss
    Jeremy LaReau